Robertino Bianco v. Globus Medical, Inc., 2015-1193, Mr. Palumbos. Thank you, Your Honors. Good afternoon. Robert Palumbos on behalf of Globus Medical. In 2007, Dr. Bianco told Globus about his idea for an expandable intervertebral spacer. He didn't have a prototype. He didn't have a product design that was workable. And he didn't have any other mechanism to implement his idea into practice. He did have a drawing that the district court described as crude, aspirational. I think we understand what the facts are. What you're arguing is that an abstract idea can't be a trade secret, that something that's not concrete can't be a trade secret, I guess relying on the, we say, unfair competition. The problem is those words themselves have an abstract quality. What kinds of cases in Texas, or indeed elsewhere, have held that an idea which is valuable, which this one was found to be, and not known before, is too abstract to be entitled a trade secret protection? What specific cases, what specific things have been held to be too abstract? I would point, Your Honor, to the Astrotechnology case, because we think that's closest on point to... That's a district court case, right? Which was affirmed by the Fifth Circuit for the reasons stated by the district court, in a per curiam opinion. And so the Fifth Circuit has adopted that view of Texas law. And in that case, what the plaintiff had was an undeveloped plan to get data from solid rocket engines using fiber optics. He didn't have any... In that case, my recollection is that what the court said was that this was known before, the use of fiber optic cables under those circumstances, not that it was too abstract an idea. Your Honor, with respect, that wasn't the basis for the grant of summary judgment. It was that it was ideas under Texas law are not trade secrets. That was the basis of his decision. And the district court relied on the Gonzalez case from the Texas Court of Appeals. So he was on firm ground under Texas law in holding that. And, again, we think that that case is directly on point with what we have here. That case also involved a written volume that described some of the concepts of how this idea would be implemented. And the district court still found in that case that was insufficient to suggest a trade secret in that situation. And it granted summary judgment, judgment as a matter of law. That rule in Astro Technologies and Gonzalez is consistent with the rule in every jurisdiction that applies the common law that's been cited by either party. There's no case that involves simply an idea set apart from a product design that would work or a prototype where that idea in and of itself has been held to be a trade secret under the common law. And the reason for that is because the common law requires the plaintiff to use the alleged trade secret in his business. An idea alone wouldn't be used in business and can't be used in business. It doesn't have commercial value for that reason. In addition to that, an idea is immediately revealed as soon as it's used. And that's the case of the Richter and Hudson Hotel from the Sixth and Second Circuit, which go down that line of rationality. The bottom line, though, is that there is no case under the common law in which an idea in the abstract form that Dr. Bianco has provided here has been held to be a trade secret. It would be unprecedented and it would be new law. And I should say, Your Honors, that this case applies Texas common law, which is no longer applicable in Texas. Texas has since adopted the Uniform Trade Secrets Act, which did away with the use in business requirement. It's possible it would have been a closer case or even a different result under the Act. But under the common law of trade secrets, this is the result that courts have always applied. If Dr. Bianco wanted coverage, wanted protection for his idea, he could have done what doctors typically do in this industry, which is to enter into a contract with Lotus that would cover his idea and provide him with reimbursement if the idea was used. He presented a contract claim to the jury and the jury rejected it. There was no contract that covered this idea. He could also have tried to seek a patent. He didn't do that. He tried to add himself as an inventor to the patent that Global filed, Globus filed, on its products. The inventorship claim was denied. He was left with a trade secret claim. It was the only claim that he prevailed on, and with respect, Your Honors, it was a square peg that he was trying to fit into a round hole. A trade secret is not a new product idea. The reason that all that Dr. Bianco had was a new product idea is because his entire theory of use in this case depended on it. He couldn't show that his drawing itself was used by anybody on the design team at Globus, and he admitted that at trial. His drawing was never communicated directly to anybody on that design team. All he could show was that the idea itself had been told to Globus, and that idea caused the spark, the inspiration, the motivation for Globus to then go back and come up with its own design that was workable, because his design, as his own expert admitted, was not workable. On appeal, and also in the district court's post-judgment opinion, Bianco has cited, quote, unquote, key features involving the drawing. There are a few things about the key features. First of all, it doesn't — we don't know what they are. He's never defined them. The district court has never defined them. Secondly, the ones that he has described in footnote 8 of his brief, and there are only three of them, don't take this from an idea to anything other — anything that resembles a trade secret. There's nothing that's not abstract. They're just more words to describe the idea which is depicted in his drawing. He — a trial presented a complete combination of publicly known elements that he said were — comprised his trade secret. That was an alternative trade secret, he suggested. And neither the district court nor he have relied on that complete combination of elements after the jury verdict. The district court didn't rely on it to uphold it, and he hasn't relied on it in this court. So what Bianco is trying to do is to pick and choose between the publicly available elements that he said were part of his trade secret. And he can't do that. There's no evidence that any sub-combination of elements was not also publicly available. So that doesn't support the district court's verdict or the jury's verdict. I'd like to turn quickly to damages. The problem with respect to damages here was that the royalty that was awarded by the jury bore no relationship to the value of what Dr. Bianco provided. Again, what Dr. Bianco provided was an undeveloped, unworkable idea that took Globus years and thousands of hours of man time to develop. That's where the value was. He also acknowledged that in the marketplace there was — But that's just an effect, isn't it, in this jury verdict? Well, yes, Your Honor. But in this case we have several things that make it the overwhelming evidence were against the jury's award. And first of all, Dr. Bianco's damages expert admitted that some apportionment of the base would be required if there were others involved in the genesis of the idea. And he admitted that there were no — that he did no apportionment of the base. It's clear that others were involved in the genesis of the idea. So there's an immediate red flag there. Then we're left with the rate. And what Dr. Bianco's expert did with respect to that was also unreliable. There was an overwhelming number of royalty agreements that Globus had entered into where Globus paid between .5 and 1 percent to doctors for their work on developing products. There were four royalty agreements that had rates of 5 or 6 percent. And two of those involved purchases of companies. One of them involved purchase of a patent. And there was only one royalty agreement that was even arguably comparable. So the great weight of the evidence, which is the standard that applies to that determination, was in favor of the .5 to 1 percent award that — that Bianco or that Globus had argued for. The district court abused its discretion in ignoring that and in upholding the verdict. Finally, Your Honor, with respect to future damages, there is no authority under Texas law to support an ongoing royalty in a trade secret case. It's simply never been done before. Isn't — isn't Pace a good enough analogy from this Court? No, Your Honor, because in the trade secret context, the value of the trade secret needs to be determined at the time of the misappropriation. And the Texas law that we've cited in this section is clear. Dr. Bianco came to trial with a theory of future damages. And he couldn't prove that theory because it was unreliable, and the district court held so in the Daubert hearing just before trial. Having done that, having failed to meet his burden of proof, the district court then gave him a second bite at the apple. That prejudiced Globus and was an error of law. Couldn't the district jury have — the district court have reasonably determined that the damages were foreseeable for a period of 15 years from the time of the alleged misappropriation? Well, Your Honor, that was the basis — if I understand your question correctly, that was the basis on which the district court held that — that Dr. Becker, who was the damages expert, was unreliable. He held that there was no basis to determine in — that you could project 15 years out because Dr. Becker didn't have grounds to determine that. He ultimately — he, meaning the district court, ultimately settled on a 15-year royalty based on, again, noncomparable agreements. He was looking at agreements that had a 0.5 to 1 percent royalty rate. Those had a 15-year term. And then he applied that to — to this situation. That was an error. We'll save the rest of your rebuttal time. Thank you very much. Mr. Shah. May it please the Court, Pratik Shah for Applee v. Dr. Bianco. Globus is sole liable — Could I follow up on the last question about the continuing 15-year royalty?  It seems to me that one of the predicates for allowing such a royalty is that the trade secret would not have been discovered by someone else during that 15-year period. And I don't recall that there was any finding or any evidence to that effect here. Could you comment on that? Sure, Your Honor. Well, the Fifth Circuit in Sykes, I think, addressed this very issue where — where that argument was made that said, okay, well, in that case it was a patent that came about and said, well, this became disclosed upon the issuance of the patent, so we shouldn't extend the royalty. Well, that doesn't seem to me to be — the patents are quite different. Is there — I thought it was pretty well established in the trade secret context that you didn't — you wouldn't be compensated for the trade secret beyond the time when it would have been discovered. So why isn't it necessary to make a finding in connection with the trade secret where there's an ongoing royalty that the trade secret wouldn't have been discovered before the end of the royalty period? Your Honor, that's not the rule under Texas Trade Secret Law. What the rule is, and Sykes says this, is in that case involved the life of the product, royalty. And what the Court said is, well, we understand the argument of this head start theory that once it becomes public, you can cut off damages. Some jurisdictions accept that rule. What the Fifth Circuit said is, we do not accept that rule. And the paradigm it used is, what we're going to look at is, at the time they would have done a hypothetical negotiation for the — Is this a trade secret case? This is a trade secret case. This is the Fifth Circuit's decision in Sykes, which is cited throughout the briefs. And what the Court said is, what we would do is we would look at a hypothetical negotiation, and certainly it would have been the case that at the time they negotiated this thing, they would have negotiated it for the life of the product, and therefore, even though it would have become public sooner than that, we're going to award the royalty as if it had been based on a hypothetical negotiation. That's the Sykes case. It says that explicitly, and we cite that in our brief. And so I think that's the best authority under Texas law, as construed by the Fifth Circuit, to allow for a royalty that extends beyond this head start period that would go for the life of the product. And I think if you look at other Fifth Circuit precedent, for example, university computing, it creates a broad equitable authority for Texas courts to be issuing fashioning remedies, not only generally, as is the case in courts in equitable remedies, but in particular in trade secret cases. And the language that the Fifth Circuit uses in university computing is the remedial relief should be, quote, flexible and imaginative. And that's particularly because sometimes in trade secret cases, the amount of the damages can be speculative, because you have to project it out for a certain number of years. It says let's be flexible and imaginative. And in particular, university computing says we can look to patent law. It's a Fifth Circuit case. We looked at patent law for analogies to provide remedies. And of course, PACE, to answer your Honor's question, I think is a very apt reality and remedy here. Now, there's nothing. Well, you can't get royalties beyond the time of the expiration of the patent. Well, Your Honor, right. And here the royalty was. You're going to make an analogy that might seem to be a fairly close one. Well, Your Honor, I think here the analogy is that royalty would last for the life of the product. And there isn't a risk of it being too speculative or anything like that, because you're actually going to multiply the sales of the product in any particular year. And if they happen to peter out before the life of the product, then there isn't any royalties going to be collected. There is not a single case in Texas law that carves out an ongoing royalty reward from the broad equitable relief that a Texas court can award. And there's two lines of cases that I'd point to that suggest that. But there aren't any Texas state cases dealing with ongoing royalties, right? That is true, Your Honor, but I think there's no case that suggests anything. Well, because I think there's – I think that you start with the broad principle that university computing, the Fifth Circuit has instructed in Texas trade secret cases. The award should be flexible and imaginative to make sure that you're compensating the plaintiff for the injury. There's two particular cases that suggest that the form of relief that the district court awarded here is actually more measured than what district – than what trial courts often award in Texas in trade secrets case. The first is Hyde. What Hyde says, the Texas Supreme Court decision, is often the remedy in these cases is a perpetual, a permanent injunction, even against use of the trade secret, even after – to go to your first question – even after it becomes public. That is Hyde, a Texas Supreme Court case which is selected. If a permanent injunction in a trade secret case, which Hyde said is routine in Texas trade secret cases, is okay, then certainly a more measured memory, a remedy of an ongoing royalty should be okay. The second data point I would point to is, again, the Sykes case, which recognizes a life of product royalty. This is like that, but instead of doing a lump sum, which has the problem of it being too speculative because you have to predict 15 years out what the sale is going to be, this is a more measured remedy that says we're going to do it on an ongoing basis so you don't get more than you're entitled to. So I think those two, Hyde and Sykes together, along with the broad charge of equitable relief in trade secret cases and university computing, provide ample authority that shows that the ongoing royalty awarded here is well within the province of the Court. The third thing I would point to you on that is the Uniform Trade Secret Act. Now, clearly this case is not directly controlled by it because the Uniform Trade Secret Act was implemented in Texas after this case happened. But the Uniform Trade Secret Act is informative because, as it says, it is incorporating the common law. And the Uniform Trade Secret Act has a specific explicit provision that says an ongoing royalty award, just like the one awarded here, is an acceptable form of relief because it is a lesser included form of the permanent perpetual type of injunction that Texas courts have long recognized. And, again, Hyde is, I think, the best authority for that. Now, on the ongoing royalty, the other thing I would point out is that this remedy all along, the first time that Globus objected to this as a permissive – they had other objections as to why you shouldn't do an ongoing royalty, the Head Start theory and other things. But the first time that they objected that this was beyond the scope of the authority of the Court was at the Rule 50b hearing. And here is what actually the district court said when it was denying the injunction in favor of an ongoing royalty award. And it said, and I'm quoting from page 853 of the addendum from Judge Bison's opinion, it says, quote, thus, the jury's verdict as to the proper compensation for past injury and evidence on which it was based strongly supports Globus's argument that monetary relief in the form of an ongoing royalty will provide full compensation for any injury attributable to Globus's misappropriation. So Globus argued, and this is captured in Judge Bison's opinion, that no, you shouldn't award the permanent injunction because you could get an ongoing royalty award that would provide sufficient compensation. So for them to argue that and then make an argument in the Rule 50b motion, says, oh, actually, Court, you didn't have any authority to do this, would not be fair. So it's not only consistent with equitable principles here, but I think it would conflict with their arguments to the Court as the district court recognized. Now, if I could shift to the liability issues, Your Honor, they make one liability argument, and it's a sufficiency of the evidence challenge predicated on two assertions. The first assertion being that Texas law categorically excludes new product ideas from trade secret protection. And the second being that Dr. Bianco's trade secret here was, in fact, limited to a mere abstract idea. Neither assertion is correct. And I would start with the second one because I think it largely obviates the need to address the first one. As the district court confirmed, and this is clearest, addendum pages 123, 124 of the district court's Rule 50b opinion, Dr. Bianco has never limited his trade secret to an abstract idea, but all along has presented it as a product idea of an adjustable spinal implant, but combined with key design features. Really, this has essentially been litigated as a product design case, and that is the protectable trade secret here. And it's interesting, and let me say that we set out some of the features in footnote 8, but the design features are not limited to those in footnote 8. Dr. Bianco's expert at trial, and I think this is very important for their argument, pages 7006 in the appendix to 7014, and it's reiterated in his expert report, which starts at page 3156 of the appendix, lays out numerous design features beyond the core idea of a continuously expandable and contractible inner body spacer. It lays out several significant features, and let me just enumerate some of them for you to be concrete. Actuation of the implant via a rotating screw mechanism to an externally triggered locking mechanism so that the implant will lock in place when you remove the instrument. Three, a dial with markings to show the level of expansion of the implant once it's inserted, and you can see that on the drawing. And four, even though this isn't on the drawing, there's testimony that it was communicated to Globus that the spacer implant be made with a center of titanium to provide enough strength. So it's not just this mere abstract idea, which they continue to characterize and mischaracterize the trade secret as, but as the district court recognized, it was that idea plus these other design features. And I think the other illuminating thing about that is in the Rule 50B motion, one of Globus' primary arguments was this 14-feature combination of a trade secret. Now their primary argument is it's just a bare abstract idea. They're providing two extreme characterizations of the trade secret. Of course, the truth lies in the middle, and at least the jury was well within its province to look at the evidence, to look at that expert testimony, and find that there was enough here. There was an idea plus key design features as depicted in the design drawings and otherwise communicated to Globus to support its jury verdict that there was a protectable trade secret here. It did not have to choose between those all or nothing extremes. This is not the place to retry the jury case. Now as to the first issue, if there is any need, and I don't think there is, to resolve this question of Texas law as to whether Texas trade secret law excludes product ideas, I think the clearest authority is not ASTRO Technologies, which is a district court decision which was affirmed in an unpublished, non-precedential, one-paragraph opinion, but it is in fact Sykes, a published Fifth Circuit decision. And here is what the published Fifth Circuit decision says in denying rehearing. It's at 671, F2D at 151, and it's printed in our brief. Texas law rejects so, and I'm quoting, quote, so rigid a distinction between new product ideas and trade secrets. The party in Sykes cited the exact same authority that the other side is citing, Richter, primarily the Sixth Circuit case, and it rejected Richter, both grounds of Richter, on which they now rely, that it has to be used in the business and that once it's used, it will become obvious. The pronouncement could hardly be clearer. It categorically rejects Richter as stating a plausible rule that's followed by some jurisdictions but not followed by Texas. And in fact, if you look at the restatement provision, which they cite on pages 27 and 28 of their brief, that's the restatement third of unfair competition. It's section 39, comment H. They cite the first half of that comment, which says most jurisdictions draw a difference between new product ideas and trade secrets. But the next sentence, which they don't quote, is, other jurisdictions, however, disagree. And then if you look at the reporter's note in that restatement to 39H, it specifically says, here are the jurisdictions that reject that clear distinction between trade secret and product ideas. The first case it cites is Sykes, the published Fifth Circuit decision. So I think it's well recognized both within published Fifth Circuit law and within the treatises that describe the general rule that they're describing and describe Texas as falling outside of that general rule. I'm happy to address any other questions, but otherwise I'll stop. Thank you, Mr. Shaw. Mr. Palumbos has a few minutes for rebuttal, if needed. Thank you, Your Honors. Your Honors, to start first with liability, I'd like to turn to the Sykes case. Sykes involved a prototype. It was a working, functioning prototype. The district court was clear, or I'm sorry, the Fifth Circuit was clear that it compared that and contrasted that to mere paper plans, they called them, that in the panel decision was a key point in why it rejected the idea that the new product idea in that case could not be a trade secret. Here all we have is an abstract idea. There's nothing that's workable in the device. There's no design. There's no prototype. All of that value was created by Globus in, as what Dr. Bianco calls, in response to and motivated by the idea that was submitted by Dr. Bianco. Now, Mr. Shaw mentioned the elements, the key features again. What he's reciting from the record are portions of the 14 element combination that Dr. Bianco relied on at trial. And it's critical to know that it was the entire combination that was described as the trade secret. Very explicitly, I'd point you to A7016 of the record where his expert, Dr. McMillan, is asked, is it the individual parts of the trade secret or something else? No, it's the combination of them. The next page, 7017 into 18. I mean, it's the combination of putting them all together to make the spacer. That's the important thing. So it's not any one single feature? No, it's how they all come together. The reason that he had to rely on the complete combination of elements is because they were all publicly available. He couldn't rely on any sub-combination, and there was no evidence that any sub-combination wasn't publicly available. It was a complete combination that was one potential trade secret. The other problem with that complete combination is that, as Dr. Bianco admitted, there was no evidence that it was used by the design team at Globus to create the device. The only evidence of use, taking the light most favorable to Dr. Bianco, was that the idea itself spurred development, and it spurred Globus to develop a workable device. So the idea is what the trade secret has to be based on his theory of use in this case. Now, turning to the ongoing royalty, and, Judge Dyke, you asked some questions about the propriety of that in this situation. We argued and put evidence before the district court about head start, that the royalty should be limited to a head start period. We think that you're exactly right in that questioning. The evidence supported a more limited royalty period beyond the trial date than 15 years. In addition, Your Honors, the ongoing royalty applies to any products that are not colorably different from Caliber and Rise. What Dr. Bianco has done is to essentially preempt all development by Globus into any expandable spacers, and he's done it based on a two-page design that the district court described as aspirational, crude, and unworkable. That is not the law of Texas trade secrets. If the Court were to uphold this jury verdict and uphold the judgment, it would be the first time that a mere idea has been held to be a trade secret under Texas law and the first time that an ongoing royalty has been applied in this situation. We ask that the Court reverse. Thank you. Thank you. Mr. Columbus will take the case under advisement. That concludes my rebuttal. Honorable Court, it's adjourned until tomorrow morning at 10 a.m. Thank you. Thank you. Thank you.